**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| GarageCo Holdings, LLC, | |
| Plaintiff, | Case No. 1:25-cv-1572 |
| v. | **TRIAL BY JURY DEMANDED** |
| Joseph English, | |
| Defendants. | |

**PLAINTIFF GARAGECO HOLDINGS, LLC'S VERIFIED COMPLAINT
FOR INJUNCTIVE RELIEF AND DAMAGES**

Plaintiff GarageCo Holdings, LLC ("GarageCo"), by and through its undersigned attorneys, alleges as follows for its Complaint against Defendant Joseph English ("English" or "Defendant"):

**NATURE OF THE ACTION**

1.      This action is the result of English's failure to comply with certain promises he made and obligations he owes GarageCo and the company it owns, Grenier Service Company D/B/A/ Cedar Park Overhead Doors ("Cedar Park"). Together, GarageCo and Cedar Park are referred to as the "Company."

2.      Specifically, English executed a "Subscription Agreement" (the "English Agreement") with GarageCo dated May 1, 2024. A true and correct copy of the English Agreement is attached hereto as **Exhibit A**.

3.      The English Agreement joined Defendant as an equity investor in GarageCo, LLC, and bound him to the GarageCo Second Amended and Restated LLC Agreement (the "LLC Agreement"). A true and correct copy of the LLC Agreement is attached hereto as **Exhibit B**.

4.      The LLC Agreement contains several restrictive covenants, including a non-

compete clause, a non-solicit clause; and a non-disparagement clause. (*See* **Exhibit B** at 21.13).

5.    Specifically, under the LLC Agreement, English agreed that, for three years after he sold his shares in GarageCo, he would not:

a.    directly or indirectly engage in or represent a business competitive with the Company;

b.    induce, recruit, solicit, or cause an employee or contractor of the Company or its subsidiaries to leave employ or engagement with the Company, or interfere with the relationship between the Company and its employees;

c.    hire any person who is or was an employee of contractor of the Company or any of its subsidiaries until 24 months after such person's employment terminated;

d.    solicit, induce, or attempt to solicit or induce any customer, potential customer, distributor, client, or other business relation to cease doing business with the Company or interfere with the relationship between the Company and its customers; or

e.    accept, solicit, or attempt to solicit business or orders for the sale of goods or provision of services that are similar to the goods and services offered by the Company.

6.    Effective June 16, 2025, English's employment terminated with the Company when he resigned from the Company.

7.    Unfortunately, English did not comply (and is not complying) with the duties and obligations he owed (and owes) GarageGo after leaving the Company on June 16, 2025. Specifically, the Company recently learned that Defendant has formed a competing business, Alpha & Omega Garage Doors & Services, LLC ("Alpha") and is actively competing against the Company.

8.    Defendant's actions are a clear violation of his Agreements and the law. Consequently, GarageCo now files suit against English for breach of the Agreements; misappropriation of the Company's trade secrets; breach of contract; and tortious interference. In doing so, GarageCo requests that this Court enter an order enjoining Defendant from continuing

his knowing and intentional breaches of the Agreements, and award GarageCo damages and attorneys' fees for Defendant's unlawful acts.

9.      More specifically, GarageCo requests that this Court enter an order (1) enjoining Defendant, and anyone acting in concert with him, from operating his competing business Alpha, (2) enjoining Defendant, and anyone acting in concert with him, from soliciting the Company's customers who were customers of the company or customers whom Defendant knew about through his relationship with GarageCo, (3) enjoining Defendant, and anyone acting in concert with him, from soliciting the Company's employees, (4) awarding GarageCo compensatory and punitive damages for Defendant's intentional acts, and (5) awarding GarageCo its reasonable attorneys' fees as provided for under the Agreements and the law.

**THE PARTIES AND RELEVANT ENTITIES**

10.      GarageCo Holdings, LLC is a Delaware limited liability company with its principal place of business located in New Canaan, Connecticut.

11.      GarageCo Holdings LLC owns Grenier Service Company, LLC dba Cedar Park, a family-owned and operated provider of residential and commercial repair and replacement services for garage doors based in Austin, Texas.

12.      Joseph English is a citizen of the state of Texas and resides at 1013 Terrace Drive, Leander, Texas 78641.

**JURISDICTION AND VENUE**

13.      This Court has subject matter jurisdiction over this dispute, pursuant to 28 U.S.C. § 1331, because GarageCo's claims against Defendant under the Federal Defend Trade Secrets Act, 18 U.S.C. § 1833, *et seq.*, raise a Federal question. GarageCo's remaining claims fall within the Court's supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, because the claims are so

related to the Federal question that they form part of the same case or controversy.

14.    Alternatively, the Court has diversity jurisdiction under 28 U.S.C. § 1332(a) because this action and controversy is between citizens of different states and exceeds the sum or value of $75,000.00, exclusive of interest and costs.

15.    This Court has personal jurisdiction over Defendant because he is a citizen and resident of Texas. Venue is proper in the United States District Court for the Western District of Texas, pursuant to 28 U.S.C. § 1391(b), because Defendant resides in this District, and a substantial part of the events giving rise to GarageCo's claims occurred in this District.

## BACKGROUND

### GarageCo's Business and the Employment of Joseph English

16.    GarageCo is a company that partners with residential and commercial garage door dealers nationwide. GarageCo has established a network of residential and commercial garage door companies and brands.

17.    GarageCo purchased Cedar Park Overhead Doors in May 2024.

18.    English was hired by Cedar Park on April 15, 2020. He worked at Cedar Park in a managerial and supervisory capacity.

19.    English worked at Cedar Park until June 16, 2025, when English's employment was terminated.

20.    The day his employment was terminated, the Company had the option to exercise the purchase of English's Unit B shares in GarageCo and the Company exercised that right on August 28, 2025.

21.    The Company takes very seriously the protection of its Confidential Information, including: the Company's business plans; information regarding the names and addresses of past,

present, and prospective customers; information regarding business relationships of the company and its subsidiaries; and product and services market pricing.

22.    As a manager and supervisor, English was entrusted with establishing, maintaining, and growing both customer and employee relationships for the benefit of the Company.

23.    Given his trusted supervisory role at Cedar Park, English received a Transaction bonus when GarageCo purchased Cedar Park. (*See* the "Transaction Agreement," attached hereto as **Exhibit C**).

24.    The Transaction bonus allowed English to purchase equity in GarageCo. (*See* **Exhibit C**). By purchasing equity Unit B shares in GarageCo, English agreed to be bound by the terms of the GarageCo LLC Agreement. (Ex. B).

25.    The GarageCo LLC Agreement requires English to agree to certain post-employment restrictive covenants. (Ex. B at § 21.13(a)-(b)).

26.    The Company expends substantial resources advertising, marketing, and promoting its services and products. The Company's employees—such as English—benefit, directly and indirectly, from the Company's advertising, marketing and promotional efforts, as well as from the Company's goodwill, reputation and name recognition. These efforts and expenditures allow the Company to develop and cultivate customers and relationships on its behalf.

27.    The Company relies heavily upon repeat business and referrals to maintain its competitive advantage in the competitive garage door installation and product industry. Maintaining goodwill and a solid business reputation with its customers is a critical component of the Company's success.  Indeed, because the Company's business is a service business, the relationship that the Company's managers and supervisors have with its customers is highly

dependent on the attention and excellent service given to the customers on an ongoing basis, and the continued trust the customers place in the Company as a leading provider of such services.

### Protection of the Company's Confidential Information

28.    The Company and its customers entrust its employees, including managers and supervisors like English, to safeguard and protect the Company's Confidential Information, which includes, in addition to the items identified in paragraph 21, information relating to, among other things, the Company's business plans; information regarding the names and addresses of past, present and prospective, customers; information regarding business relationships of the company and its subsidiaries; and product and services market pricing.

29.    The Company protects this information by, among other things: limiting the disclosure and use of this information to only the members who need this information; educating the employees about the requirement and necessity of keeping this information confidential; restricting access to this information by limiting access to computer networks and requiring the use of passwords to access the information, and monitoring its facilities through the use of video equipment.

30.    Consequently, individuals with a membership interest in the Company acknowledge that they will have access to the Company's Confidential Information, promise to not disclose the Company's Confidential Information to anyone not authorized to receive it, and confirm that they will not use the Company's Confidential Information for their own benefit or for any improper purpose.

31.    Company employees with a membership interest the Company agree, upon termination of their employment by the Company, to continue treating Company Confidential Information as confidential, not disclose, either directly or indirectly, Company Confidential

Information to any third party, and immediately return all Company Confidential Information to the Company.

32.     Hence, the Company's Confidential Information is not available to the general public and is closely guarded by the Company. The Company keeps such information strictly confidential in order to protect its customers' privacy and to maintain a competitive advantage in the highly competitive garage product and service installation industry.

**English Enters the LLC Agreement to Purchase Company Shares**

33.     In May 2024, English signed a subscription agreement (the English Agreement) to purchase Class B Units of GarageCo. (Ex. A).

34.     Upon signing the English Agreement, in consideration of $██████ per Class B Unit, English also agreed to be bound by the terms of the LLC Agreement. (Ex. A § 1.2(b)).

35.     English signed a Joinder of the LLC Agreement in conjunction with the English Agreement. (Ex. A at Ex. A). The Joinder states that English "shall be bound by, and subject to, all of the covenants, terms and provisions of the LLC Agreement applicable to an "Other Member" and shall be deemed to be a "Member" and an "Other Member" for all purposes of the LLC Agreement (including, without limitation, Section 21.13 of the LLC Agreement)…" (*Id.*)

36.     Under the LLC Agreement and the English Agreement, English acknowledged that "all non-public information furnished to such Other Member or member Beneficiary pursuant to this Agreement will be kept confidential and may not be (x) used for any purpose or (y) disclosed by, in each case, such Other Member or Member Beneficiary, or by any of such other Member's or Member Beneficiary's agents, representatives, advisors, officers, managers, directors, or employees, in any manner in whole or in part…" (Ex. B, § 9.3(a).)

37.    Pursuant to Sections 21.13(a) and 21.13(b) of the LLC Agreement, English also agreed to restrictive covenants. Specifically, he agreed that, for a period of three years following the sale of his membership units, he would not:

- directly or indirectly, own, manage, control, participate in, consult with, render services for, receive any economic benefit from or exert any influence upon, or in any manner engage in or represent any business … that is competitive with the businesses and/or services of the Company or any of its Subsidiaries;

- induce, recruit, solicit or cause, or attempt to induce, recruit, solicit or cause any employee or contractor of the Company or any of its Subsidiaries to leave the employ or engagement of the Company or in any way interfere with the relationship between the Company or any of its Subsidiaries, on the one hand, and any employee or contractor thereof, on the other hand;

- hire any person who is or was an employee or contractor of the Company or any of its Subsidiaries until after twenty-four (24) months after such individual's employment or other service relationship with the Company or any of its Subsidiaries has terminated;

- solicit, induce or attempt to solicit or induce any customer, potential customer, reseller or distributor, client or other business relation of the Company or any of its Subsidiaries to cease or reduce doing business with the Company or any of its Subsidiaries, or in any way interfere or attempt to interfere with the relationship between any such customer, reseller or distributor, client or business relation, on the one hand, and the Company or any of its Subsidiaries, on the other hand;

- accept, solicit, or attempt to solicit business or orders for the sale of goods or the provision of services which are similar to the goods or services offered by the Company or any of its Subsidiaries.

(Ex. B, § 21.13(a)-(b).)

38.    English agreed that "money damages would be an inadequate remedy for any breach" of Section 21.13, and that the Company "would be irreparable damaged" if he were to "breach the covenants set forth in… Section 21.13." (Ex. B, § 21.13(d)).

39.    Accordingly, English agreed that if he breached or threatened to breach any of the Section 21.13 obligations under the LLC Agreement, then the Company would be entitled to "apply to any court of competent jurisdiction for specific performance and/or injunctive or other

relief in order to enforce, or prevent any violations of, the provisions of this Section 21.13 (without posting a bond or other security)[.]" (*Id.*)

40.     English agreed that if there were a violation of Section 21.13, "the breaching party [would have] to account for and pay over to the Company all compensation, profits, moneys, accruals, increments or other benefits derived from or received as a result of any transactions constituting a breach of this Section 21.13 if and when final judgment of a court of competent jurisdiction is so entered against such breaching party." (*Id.*)

### Defendant Breaches His Agreement with the Company

41.     Pursuant to the LLC Agreement, Defendant agreed that, after his relationship with the Company terminated, he would: (a) not compete with the Company; (b) not solicit Company employees for three years; (c) not solicit company contractors until a period of 2 year passed after their service relationship with the Company ended; (d) not solicit any customers for three years; and (e) not solicit any business for goods or services similar to those of the Company for three years.

42.     English's employment terminated on June 16, 2025.

43.     English was required to return all Company confidential information at that time.

44.     Naturally, English was prohibited from using, possessing, or accessing the Company's Confidential Information after June 16, 2025.

45.     Similarly, English is prohibited from soliciting the Company's employees, contractors, or customers until after June 16, 2028.

46.     English is also prohibited from competing with the Company until after June 16, 2028.

47.    Unfortunately, English is ignoring his post-termination obligations in several different ways.

48.    First, Defendant is actively soliciting the Company's employees. Take one example. On or about July 11, 2025, a now-former (but then current) Cedar Park employee was seen wearing an Alpha shirt, picking up supplies at a competing vendor.

49.    Upon information and belief, this then-current Cedar Park employee was purchasing product for Defendant's competing business venture—Alpha—in violation of the restrictive covenants.

50.    Upon information and belief, this employee is working for English's competing venture, Alpha.

51.    Second, Defendant is actively soliciting the Company's customers. Defendant has created a commercial website that directly competes with the Company's services and products.[1] The website's homepage states, "We serve Austin, surrounding cities, and the Texas Gulf Coast, specializing in high-end custom garage doors for builders who demand quality craftsmanship and long-term partnership." (**Exhibit D**).

52.    Moreover, the website's homepage states that Alpha provides the following services and products (i) custom design & installation, (ii) garage installation, and (iii) sales premium brands. (Ex. D)

53.    While working for the Company, English served Austin, the surrounding cities, and the Texas Gulf Coast.

54.    Thus, English is selling and providing competitive services and products in the exact same territory he covered for the Company.

---

[1] https://aogaragedoorsatx.com.

55.    The Alpha website also includes a phone number and email address where prospective customers can call. It also has a "contact us" form so that website visitors can easily submit requests for Alpha installation services. (Ex. D).

56.    Defendant's solicitation of actual and prospective Company customers—and violation of the non-solicitation provision—has been brazen. The "About" page on the Alpha website appears as below:



57.    On Defendant's competing website, he admits that he previously worked in "leadership" at a "major garage door company" (*i.e.,* GarageCo). In doing so, he admits to violating the non-compete and non-solicitation provisions of the LLC Agreement.

58.    Third, Defendant is actively competing with the Company by running his own business that is competitive with the Company. On July 18, 2025, a vendor used by the Company reported to the Company that Defendant was purchasing product for his new competing venture, Alpha, from the vendor.

59.    The same vendor reported that Defendant—through his new competing company, Alpha—had successfully installed a new Amarr garage door on an apartment building. GarageCo

therefore has proof that Defendant is actively operating his competing entity in violation of the non-compete in the LLC Agreement.

60.    On June 27, 2025, the Company served English with a letter demanding that he (a) immediately return all Company confidential information in his possession, custody, and control; (b) stop competing with the Company; and (c) affirm in writing that he will comply with the duties and obligations he still owes the Company. A true and correct copy of the Company's June 27, 2025 letter is attached hereto as **Exhibit E**.

61.    The letter also reminded English that the Company may pursue injunctive relief, monetary damages, attorney's fees and expenses for breaches of the Agreement. (*See* Ex. E).

62.    English did not respond to the Company's letter. Instead, English continued to solicit the Company's customers and employees, and compete with the Company.

63.    On August 27, 2025, the Company sent English a second letter demanding that he stop his unlawful solicitation and competition. The letter informed English that it would file a lawsuit if he did not immediately cease violating the terms of the Agreement. A true and correct copy of the Company's August 27, 2025 letter is attached hereto as **Exhibit F**.

64.    English has not responded to the Company's August 27 letter. Instead, English continues to solicit the Company's customers and employees, and compete with the Company.

65.    Put another way, English is ignoring the duties and obligations he owes the Company under the LLC Agreement. He is also ignoring the duties and obligations he owes the Company under the law.

## Irreparable Harm to the Company

66.    English is harming the Company's legitimate business interests, including its goodwill and customer relationships, by soliciting the Company's customers.

67.     Additionally, English is using the Company's Confidential Information on behalf of himself.

68.     Injury to the Company is therefore ongoing because English clearly intends to continue violating his Agreement and continue using the Company's Confidential Information to appropriate past, current, and prospective customers and employees.

69.     Accordingly, the Company is suffering irreparable harm, and injunctive relief is necessary and appropriate to prevent further damage to the Company.

### <u>COUNT I</u>
### (Breach of Contract)

70.     The Company repeats and realleges each and every allegation contained in paragraphs 1 through 69 of the Complaint, as if fully set forth herein.

71.     On May 1, 2024, English entered into the English Agreement with GarageCo. (Ex. A).

72.     The English Agreement is a valid and enforceable contract.

73.     Under the English Agreement, Defendant agreed to be bound to the LLC Agreement. (Ex. B).

74.     Under the LLC Agreement, Defendant promised—for three years following his sale of his Unit Shares of GarageCo—to not compete with the Company.

75.     Under the LLC Agreement, Defendant promised—for three years following the termination of his employment with the Company—to not solicit employees, customers, or vendors of the Company.

76.     The post-termination covenants found in the LLC Agreement are reasonable in scope and duration and are necessary to protect the Company's legitimate business interests in its Confidential Information, goodwill, and longstanding customer relationships.

77.    GarageCo has performed all of the duties and obligations it owes English under the LLC Agreement.

78.    English breached the LLC Agreement, and continues to breach the LLC Agreement, by, among other things, soliciting the Company's customers.

79.    English breached the LLC Agreement, and continues to breach the LLC Agreement, by, among other things, soliciting the Company's employees.

80.    English breached the LLC Agreement, and continues to breach the LLC Agreement, by, among other things, competing with the Company through his new venture Alpha, a competitive commercial and residential garage door services and products business.

81.    GarageCo has incurred significant damage as a result of Defendant's breaches of the LLC Agreement. Defendant's illegal solicitations and actions damaged and are continuing to damage the Company's goodwill and customer relationships.  GarageCo's damages are in excess of $75,000.00.

82.    Moreover, Defendant's breaches of the LLC Agreement are continuing.  GarageCo is therefore subject to continuing irreparable harm, economic injury, and damage to its goodwill and customer relationships.

83.    GarageCo has no adequate remedy at law and, unless injunctive relief is granted, the Company will continue to be irreparably harmed by Defendant's breach of the LLC Agreement in a manner that is not fully compensable by money damages.

84.    GarageCo therefore requests that this Court grant injunctive relief against Defendant that prohibits Defendant from (a) soliciting the Company's customers, (b) soliciting the Company's employees and (c) engaging in a competitive business.

85.     GarageCo further requests that this Court order Defendant to immediately return all Company property in the custody, possession, or control of Defendant, including Company Confidential Information, to the Company.

86.     GarageCo is also entitled to recover the attorneys' fees and costs GarageCo incurs as a result of Defendant's breaches of the LLC Agreement.

**COUNT II**
**(Violation of the Texas Uniform Trade Secrets Act, Tex. Civ. Prac. & Rem. § 134a.001 *et seq.*)**

87.      GarageCo repeats and re-alleges each and every allegation contained in paragraphs 1 through 86 of the Complaint, as if fully set forth herein.

88.     During the course of his relationship with the Company, English was exposed to substantial amounts of the Company's Confidential Information.

89.     For instance, English had access to: the Company's business plans; information regarding the names and addresses of past, present and prospective, customers; information regarding business relationships of the company and its subsidiaries; and product and services market pricing.

90.     The Confidential Information identified in paragraphs 21, 28 and 86 is not available to the general public and is closely guarded by the Company. The Company keeps such information strictly confidential in order to maintain an advantage in the competitive commercial and residential garage door service and product business.

91.     This information is considered a trade secret under the Texas Uniform Trade Secrets Act ("TUTSA"), Tex. Civ. Prac. & Rem. § 134a.002 *et seq.*, because the Company derives independent economic value from this information not being generally known to the public, the information is not readily ascertainable by proper means by persons who could obtain economic

value from its disclosure or use, and the information is the subject of reasonable measures to maintain its secrecy.

92.     The economic value of the Company's trade secrets/Confidential Information to which English had access to under his employment position is over $500,000.

93.     The TUTSA permits injunctive relief for actual or threatened trade secret misappropriation.

94.     English misappropriated the Company's trade secrets when he used the Company's current and/or prospective customer list to solicit the Company's customers.

95.     English is also refusing to return the Company's trade secrets and his refusal to return the Company's trade secrets constitutes the threatened misuse of the Company's trade secrets and injunctive relief is therefore appropriate.

96.     Accordingly, GarageCo requests that this Court enter an order enjoining English from using any Company Confidential Information, and from disclosing the Company's Confidential Information to anyone not authorized to receive the Confidential Information.

97.     GarageCo also requests that this Court enter an order requiring English to return any and all Company Confidential Information to the Company.

98.     In addition, English's actions have damaged the Company's goodwill, reputation, and legitimate business interests.

99.     GarageCo is therefore entitled to compensatory and exemplary damages in an amount to be proven at trial, as well as reasonable attorneys' fees.

100.    Finally, English's misappropriation of the Company's trade secrets was willful and malicious.

101.     GarageCo therefore requests an award of compensatory damages, exemplary damages, and reasonable attorneys' fees as a result of English's willful and malicious misappropriation of the Company's trade secrets.

## COUNT IV
**(Violation of Federal Defend Trade Secrets Act, 18 U.S.C. § 1833 *et seq.*)**

102.     GarageCo repeats and realleges paragraphs 1 through 101 of the Complaint, as if fully set forth herein.

103.     During the course of his relationship with the Company, Defendant was provided access to substantial amounts of Company Confidential Information, including the Confidential Information identified in paragraphs 21, 28 and 86.

104.     Company Confidential Information is not available to the general public and is closely guarded by the Company. The Company keeps such information strictly confidential in order to maintain a competitive advantage over competitors.

105.     Company Confidential Information is considered a trade secret under the Defend Trade Secrets Act, 18 U.S.C. § 1833, *et seq.* ("DTSA"), because the information is not generally known outside of the Company's business, the information is not generally known by employees and others involved in the Company's business, the Company has taken reasonable measures to guard the secrecy of the information, the information is of great value to the Company and its competitors, the Company invested significant amounts of time and money in developing the information, the information cannot easily be acquired or duplicated by others, and because the Company continuously uses the information in its business.

106.     Defendant misappropriated the Company's Confidential Information when he used the Company's current and/or prospective customer list to solicit the Company's customers.

107. Defendant is also refusing to return the Company's trade secrets and his refusal to return the Company's trade secrets constitutes the threatened misuse of the Company's trade secrets.

108. Unless restrained, Defendant will continue to use, divulge, disclose, acquire and/or otherwise misappropriate the Company's Confidential Information.

109. Furthermore, actual or threatened misappropriation of Confidential Information may be enjoined under the DTSA.

110. It is axiomatic that if Defendant is actively using the Company's Confidential Information and ignoring the terms of his agreements with the Company, then Defendant has no intention of complying with the DTSA.

111. Consequently, Defendant's actions constitute the actual and/or threatened misuse of the Company's Confidential Information. Injunctive relief against Defendant is therefore appropriate.

112. Naturally then, GarageCo requests an order enjoining Defendant from using the Company's Confidential Information and from disclosing the Company's Confidential Information to anyone not authorized to receive the Confidential Information.

113. Finally, Defendant's misappropriation of Company Confidential Information has been willful and malicious, and GarageCo has incurred significant damages as a result of Defendant's misappropriation.

114. Defendant's actions have also damaged GarageCo's good will, reputation, and legitimate business interests.

115.    GarageCo is therefore entitled to recover not only compensatory damages, but also punitive damages and attorneys' fees resulting from Defendant's wrongful misappropriation of the Company's Confidential Information.

## COUNT V
### (Tortious Interference)

116.    GarageCo repeats and realleges each and every allegation contained in paragraphs 1 through 115 of the Complaint, as if fully set forth herein.

117.    Defendant was and is aware of the contractual relationship between the Company and its customers, as well as the Company's expectancy in developing relationships with potential customers.

118.    Defendant knew and understood that the Company's contractual relationship with its customers would continue after his employment terminated.

119.    Pursuant to the LLC Agreement and Joinder, Defendant was obligated not to solicit or otherwise interfere with the Company's customer relationships for a period of three years after he held LLC Units in GarageCo.

120.    Nevertheless, Defendant solicited the Company's customers after his employment was terminated and his LLC Units were purchased.

121.    Hence, Defendant knowingly, intentionally, willfully, and maliciously interfered with the Company's customer relationships within three years after his LLC Units were purchased.

122.    Defendant's conduct was not privileged or justified.

123.    GarageCo has incurred significant damages as a result of Defendant's interference with GarageCo's contractual relationships.   GarageCo has suffered the loss of customers and potential customers. Defendant's actions have also damaged the Company's goodwill, reputation, and legitimate business interests.

124.    As a direct and proximate result of Defendant's tortious interference, GarageCo has been damaged in an amount to be determined at trial and is entitled to the recovery of punitive damages as well.

**WHEREFORE**, Plaintiff GarageCo Holdings LLC respectfully requests that this Court:

1.    Enter an injunction enjoining and restraining Defendant, and his agents, representatives, associates, employees, and all those acting in concert or participation with them, from soliciting the purchase of residential and commercial garage door products and services competitive to those offered by GarageCo and any of its purchased entities from any person Defendant serviced or knew of through Defendant's relationship with the Company, including but not limited to requiring Defendant to cease operating his competing business, Alpha & Omega Garage Doors & Services LLC in violation of the restrictive covenant he signed in the LLC Agreement;

2.    Enter an order requiring Defendant to cease soliciting current and former employees of the Company in violation of the restrictive covenant he signed in the LLC Agreement;

3.    Enter an order requiring Defendant to cease soliciting past, current or prospective customers of the Company in violation of the restrictive covenant he signed in the LLC Agreement;

4.    Enter judgment against Defendant for compensatory damages in an amount to be determined at trial;

5.    Award Plaintiff the costs and expenses, including reasonable attorneys' fees, Plaintiff incurs as a result of Defendant's breach of his agreements;

6.    Award Plaintiff the costs and expenses, including reasonable attorneys' fees, GarageCo incurs as a result of Defendant's intentional, willful and wanton violation of the Federal Defend Trade Secrets Act and the Texas Uniform Trade Secrets Act;

7.    Award GarageCo punitive damages resulting from Defendant's intentional, willful, and wanton violation of the Federal Defend Trade Secrets and the Texas Uniform Trade Secrets Act; and

8.    Award GarageCo such other relief as the Court may deem just and proper.

[*Signature block on the following page.*]

**Dated:**  September 29, 2025

Respectfully submitted,

*/s/ Nora K. Cook*

NORA K. COOK (0086399)
**BENESCH, FRIEDLANDER, COPLAN &
ARONOFF LLP**
127 Public Square, Suite 4900
Cleveland, OH 44114
Telephone: (216) 363-4418
Fascimile: 216.363.4588
Email: ncook@beneschlaw.com

J. SCOTT HUMPHREY (application for
admission pending)
MAURA LEVINE-PATTON (*pro hac vice*
forthcoming)
**BENESCH, FRIEDLANDER, COPLAN &
ARONOFF LLP**
71 South Wacker Drive, Suite 1600
Chicago, Illinois 60606-4637
Telephone:  312.212.4949
Facsimile:  312.767.9192
Email:   shumphrey@beneschlaw.com
            mlevine-patton@beneschlaw.com

*Attorneys for Plaintiff GarageCo Holdings, LLC*

## VERIFICATION

Pursuant to 28 U.S.C. § 1746, I, Marcus Introna, on behalf of Plaintiff GarageCo Holdings, LLC, verify under penalty of perjury that the foregoing statements in the Verified Complaint are true and correct to the best of my knowledge, information and belief.

Marcus Introna

Dated: September 23, 2025